## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALI AL-AWADI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-03327-TWP-MPB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ENTRY ON MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255 AND DENYING CERTIFICATE OF APPEALABILITY

This matter is before the Court on the Motion of Petitioner Ali Al-Awadi ("Al-Awadi") for relief pursuant to 28 U.S.C. § 2255 (Dkt. 1).  The Court concludes that no evidentiary hearing is necessary because "the motion and the files and records of the case conclusively demonstrate that the petitioner is not entitled to relief."  28 U.S.C. § 2255.  For the reasons stated below, the Motion is **denied** and the action dismissed with prejudice.  In addition, the Court finds that a certificate of appealability should not issue.

## I.  LEGAL STANDARD

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence.  *See Davis v. United States*, 417 U.S. 333, 343 (1974).  A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice."  *Blake v. United States*, 723 F.3d 870, 878–79

(7th Cir. 2013).

## II.  FACTUAL BACKGROUND

Al-Awadi was charged by Second Superseding Indictment with four counts of sexually exploiting a minor through the production of child pornography, in violation of 18 U.S.C. § 2251(a), and four counts of attempted sexual exploitation of a minor through the production of child pornography, in violation of 18 U.S.C. § 2251(e).  *United States v. Al-Awadi*, No. 1:15-cr-00072-TWP-DML-1 ("Cr. Dkt.") (Dkt. 63.)  The charges were based on four photographs Al-Awadi admittedly took (and then deleted) of sleeping four-year-old child victim one ("CV1"), while he was working at a daycare center on August 21, 2014.

The first four counts required the Government to show, among other things, that Al-Awadi employed, used, persuaded, induced, enticed, or coerced CV1 to engage in "sexually explicit conduct," which is defined to include a "lascivious exhibition of the anus, genitals, or pubic area of any person."  18 U.S.C. §§ 2251(a), 2256(2)(A).  The second four counts required the Government to show that he attempted to do so.  *Id.* § 2251(e).

Three of the photographs depicted CV1's pubic area, and one of them depicted the inside of her pants.  The Government's theory of the case was that Al-Awadi took the photographs within seconds of sexually molesting CV1 during naptime on August 21, 2014, thereby meeting the "lascivious exhibition" standard.  Al-Awadi admitted that he took the photographs during naptime on August 21, 2014, and that some of them depicted CV1's pubic area.  He did, however, dispute that the photographs involved a "lascivious exhibition".  Instead, he contended that he took the photographs because he was inspecting CV1 for a suspected injury—possibly caused, he said, by his watch when CV1 playfully wrapped her legs around his arm before naptime.  He maintained

that he deleted the photographs shortly after he took them because he was afraid that he would be blamed for any injury to CV1.  He denied molesting CV1. The Government argued that Al-Awadi's version of events was not credible, focusing on how his account had changed over time and how he failed to tell anyone about the photographs (or his purported purpose for taking them) until after they were discovered on his cell phone.

Al-Awadi was tried by jury from February 23 through 26, 2016.  (Cr. Dkt. 79–83.)  The trial transcript spans more than 700 pages, and the Court summarizes the relevant evidence here.

On the issue of whether Al-Awadi was sexually molesting CV1 when he took the photographs, CV1—who was six years old at the time of trial—testified that Al-Awadi touched her "in the privacy" during naptime at daycare.  (Cr. Dkt. 121 at 9:12–10:6.[1])  The jury also saw videotaped interviews with CV1 (conducted by a professional child interviewer) conducted on August 22, 2014, in which CV1 repeated (verbally and by pointing) that the part of her body that Al-Awadi had touched was her vagina. (Cr. Dkt. 120 at 87:22–88:5, 89:1–13, 90:8–93:5, 98:19–100:6, 103:16–19.) One of CV1's daycare teachers testified that CV1 told her shortly after naptime on August 21, 2014 that Al-Awadi had touched her "down there," pointing to her vagina, and that it hurt. *Id.* at 14:5–15:2.  The teacher explained that she had Al-Awadi return to the room and that, when CV1 said he touched her vagina, Al-Awadi pulled CV1 onto his lap and said, "No, thank you" to CV1 . *Id.* at 15:6–23.  CV1's parents testified that, later in the evening on August 21, 2014, CV1 told them that Al-Awadi touched her "tito" which is the word CV1 used to describe her vagina[2]; they also testified about CV1's behavioral changes after they picked her up from daycare

---

[1] For ease in locating the pages cited, citations to the trial transcript are to the page numbers "stamped" on it when it was filed in CM/ECF.
[2] *See* Dkt. 119 at 32, 45,52, 103.

3

on August 21, 2014.  (Cr. Dkt. 119 at 46:5–11, 51:19–52:25, 76:11–77:17.)  The forensic nurse who examined CV1 on the night of August 21, 2014 testified that she found swelling and areas of redness that were consistent with digital penetration and that she could find no other medical explanation for the findings.  *Id.* at 115:12–119:8.  A pediatrician who later examined CV1 and reviewed the forensic nurse's examination findings testified that it was unlikely that CV1's injury was caused by a watch.  (Cr. Dkt. 121 at 46:23–47:17, 54:18–56:19.)  A forensic scientist testified that DNA consistent with Al-Awadi's DNA was found inside the crotch panel of the underwear CV1 was wearing on August 21, 2014. *Id.* at 140:19–141:11, 143:12–144:11, 171:22–25, 172:5–6, 173:7–176:10.

The Government also offered into evidence Al-Awadi's cell phone, from which the four photographs were recovered.  A digital forensic examiner testified that the first two photographs had time stamps showing they were taken at 1:23:13 p.m. and 1:23:19 p.m., and that the second two photographs were taken at 1:25:55 p.m. and 1:26:01 p.m. *Id.* at 96:16–98:9.  He testified that the photographs had been deleted by the time he examined the cell phone, but that he could not tell when the deletions occurred.  *Id.*; *see also id.* at 98:14–16.  The Government also offered another picture recovered from Al-Awadi's cell phone—a picture of Al-Awadi and CV1 taken on an unknown date.  *Id.* at 112:10–114:13, 118:13–16.  The examiner testified that that picture had been deleted before he examined the cell phone.  *Id.* at 113:9–12.

 The Government also offered the testimony of the lead detective who investigated the case and his videotaped interview of Al-Awadi.  (Cr. Dkt. 120 at 108:24–110:16.)  During the interview, law enforcement had not yet examined Al-Awadi's cell phone and did not know that Al-Awadi had taken photographs of CV1.  *See id.* at 11:15–20, 115:4–9.  In the interview, Al-Awadi gave

4

several versions of what had occurred on August 21, 2014, all of which focused on his claim that CV1 may have injured herself on his watch. *Id.* at 124:6–125:22, 128:2–130:1, 130:17–131:16, 133:15–134:5. He never mentioned that he had taken photographs of CV1 in an attempt to inspect her for injuries and, in fact, repeatedly denied that he had seen CV1's underwear. *Id.*

The Government presented testimony from Michael Johnson ("Agent Johnson"), a special agent with the Department of Homeland Security ("DHS"). At the final pretrial conference, the Government explained that Agent Johnson would "kind of teach the jury about some of the things that are typically looked at in determining whether an image is lascivious or not lascivious." (Cr. Dkt. 130 at 12–13.) Al-Awadi's counsel did not object. *Id.*

At the time of the trial, Agent Johnson had been investigating cyber child exploitation cases for DHS for 10 years. (Cr. Dkt. 121 at 195:15–196:1.) He had training in the area from DHS, the United States Department of Justice, the Dallas Crimes Against Children Conference, the Internet Crimes Against Children Conference and digital forensics training from the DHS, the Department of Justice, as well as vendor-based training, actual computer platform-specific training. *Id.* at 196:2–13. He had been involved in "approximately 500 or more" investigations involving computer-based exploitation of a child, which required him to investigate the possession, distribution, and production of child exploitation material and child pornography and to examine the digital evidence gathered in those cases. *Id.* at 196:14–197:3. On multiple occasions he had been involved in cataloging and categorizing images and classifying them as child pornography or not. *Id.* at 197:4–11.

As anticipated by the Government, Agent Johnson explained the definitions of various terms used in the relevant statutes, including the definition of "lascivious exhibition." *Id.* at

5

199:22–201:12.  He explained that, to be a lascivious exhibition, an image must focus on the genitals or pubic area in order to excite lustfulness or sexual stimulation in the viewer.  *Id.* at 201:10–14, 212:24–213:1.  He explained that "focus" did not mean "in focus" but rather "where your eyes are drawn to in the picture."  *Id.* at 201:15–22.  He explained that not every image of a nude minor qualifies as lascivious and that images with "some type of artistic, scientific, or documentative value" do not qualify.  *Id.* at 201:23–202:11.  He reviewed the four photographs Al-Awadi had taken of CV1, testifying that three of them show CV1's pubic area and that the focal point of the three images was CV1's pubic area.  *Id.* at 204:4–205:20, 208:1–209:4.  He testified that the fourth image appeared to be "the tab for the button on the inside of the beltline" on the inside front of CV1's pants.  *Id.* at 205:23–206:3–8.

Agent Johnson explained that knowing the context in which a visual depiction is produced is important in determining whether an image is lascivious.  *Id.* at 203:7–20.  In response to a hypothetical question, he testified that it would be important to know if images were created during the course of molesting a child because "it would remove any doubt that the photographs may have been taken accidentally" and "would lend itself to the thought process of the person taking the photographs," which "would be to memorialize the molestation."  *Id.* at 209:10–19, 211:7–20.

Agent Johnson also testified that he was familiar with a "concept called grooming."  *Id.* at 216:15–16.  He testified that, with respect to crimes against children, "grooming is a process by which an offender will provide things to the child to gain trust," like clothing, gifts, and toys.  *Id.* at 16:18–23.  He also testified about "seduction," where a person "groom[s] the child by making the child comfortable with not only having their picture taken at all, but having their picture taken by a specific person, so the idea of the camera being a part of that relationship is not strange . . .

by the time you get to the point where the child is exploited." (Cr. Dkt. 121 at 216:24–217:5). He testified that grooming could include having inside jokes with and special names for a child. *Id.* at 217:6–10. He testified that the undated picture of Al-Awadi and CV1 could be "consistent with a grooming photo" and "could be consistent with a seduction by camera." *Id.* at 217:18–21.

Al-Awadi's counsel did not object to any of this testimony.

On cross-examination, Al-Awadi's counsel asked Agent Johnson about the various elements that must be present for something to be child pornography. *Id.* at 218:4–219:1. Agent Johnson responded affirmatively when Al-Awadi's counsel asked, "So in this case, you have determined, in your mind, that it fits the definition for you, because it is a lascivious exhibition, correct?" *Id.* at 219:2–5. He also admitted that an image was not child pornography simply because the focus of the image was a child's genitals, noting that a doctor could take a picture focusing on a child's genitals for medical reasons without creating child pornography. *Id.* at 219:10–21. The following exchange then occurred:

> Q. Well, you've drawn some conclusions here about intent, the intent of Al-Awadi. Those kinds of things, that knowledge of those kinds of things, would also add to your opinion about his intent, would they not?
>
> A. My -- I have no opinion of Al-Awadi's intent.
>
> Q. Well, you kind of do, because when -- your definition of child pornography has to do with – you've already said it has to do with what his intentions were when he took the photographs, right? What would separate the doctor from the pornography, your intent and purpose for the photographs, right?
>
> A. Those photographs, as I've looked at them on their face, I believe are child pornography, yes.
>
> Q. I understand.
>
> A. Yes.

Q. And part of the reason that you said is because you -- in your opinion, a molestation took place?

A. I was told that, yes.

Q. You were told that?

A. Yes, sir.

Q. Do you know -- you're taking that as a given, when you start looking at those photographs, that a molestation took place?

A. Yes, sir.

*Id.* at 223:5–224:2. After the exchange, Agent Johnson admitted that the photographs would not be lascivious if they were taken for any purpose other than to excite lustfulness or sexual stimulation. *Id.* at 225:10–18. After Agent Johnson's testimony, the Government rested its case. *Id.* at 227:12.

Al-Awadi testified in his own defense. He gave his version of what happened on August 21, 2014. He testified that, as he was preparing for naptime, CV1 came and sat on his lap, as if she did not want him to stand up. *Id.* at 251:10–252:5. He said that he told her it was time to get up, but she refused, so he "went to pick her up like she was a baby, like cradle her." *Id.* at 253:7–15. At that point, he explained, "she wrapped her legs around [the] arm" on which he wore his watch so that he "couldn't place her down" and was "squirming around a lot." *Id.* at 253:15–255:9. Al-Awadi testified that he tried to pull his arm out, and she said, "Ouch," and, "You hurt me down there." *Id.* at 255:11–18. He said that, when he asked if she was okay, she replied, "I'm okay," and, "It hurts when I pee." *Id.* at 256:22–23.

Al-Awadi testified that he was worried about whether CV1 was injured, but he told all the children to lie down for naptime. *Id.* at 257:3–8. After CV1 laid down to sleep, he explained, he

8

"lifted up the jeans to see if there was any marks . . . from what [he] did." (Cr. Dkt. 121 at 258:21–22. He said that it was dark in the room, so he took out his phone and turned on the flash on the phone's camera. *Id.* at 259:24–260:2. Then, he explained, he "took some photographs to see if [he] could see any injuries." *Id.* at 260:4–5. He testified that he took two photographs and did not see any injuries, but then CV1 squirmed and said, "You hurt me, Mr. Ali," so he took two more photographs "to make sure again." *Id.* at 260:13–18. He said that he wanted to report the injury, but he "felt like [he] would have been blamed for it and gotten in trouble for it." *Id.* at 261:6–9. So, he explained, he deleted the photographs and did not mention the incident. *Id.* at 261:9–10. He testified that knew he was not supposed to examine children for injuries, but he took the photographs because he was scared. *Id.* at 261:11–15. He said his intention in taking the photographs was not sexual, but rather to see if CV1 was injured. *Id.* at 261:20–262:1. He denied putting his hands inside of CV1's vagina and denied touching CV1's underwear other than to lift it up to take the photographs. *Id.* at 263:22–264:2.

In discussing his interview with the investigating detective, Al-Awadi admitted that he did not tell the detective the full truth, left out important parts (including the fact that he took photographs of CV1), and lied. *Id.* at 269:20–270:2. He said he did so because he was scared. *Id.* at 270:1–7. At the end of direct examination, this exchange occurred:

Q:      Did you ever want to hurt [CV1]?

A:      No.

Q:      Any child?

A.      Never.

*Id.* at 271:14–17.

On cross-examination, Al-Awadi admitted that he shared inside jokes with CV1 and that he and CV1 called each other, "Little Baby." *Id.* at 273:14–19.  He admitted that his account of the events of August 21, 2014, had changed over time and that he had even added new details in his trial testimony. *Id.* at 291:3–294:16.  He admitted that he lied to the investigating detective by telling him repeatedly that he never saw CV1's underpants. *Id.* at 295:8–12.  He admitted that he had previously filled out accident reports for children who injured themselves while in his care. *Id.* at 306:10–12.  He admitted that he had never previously taken photos to document injuries to a child. *Id.* at 307:3–6.  He admitted that, in the past, when another child had complained about genital pain, he informed another staff member and did not get in any trouble. *Id.* at 308:9–23.  He admitted that he could have contacted another staff member when CV1 first complained of pain before naptime but did not do so. *Id.* at 309:3–6. He admitted that, when he returned to CV1's room after naptime and was confronted with the accusation against him, he asked CV1 if she had been dreaming and said, "We're not supposed to lie." *Id.* at 315:10–13.

The Government then asked, "There are some other things you weren't honest with the detective about that day, correct?" *Id.* at 323:2–3.  When Al-Awadi said he did not understand the question, the Government asked, "Okay. Well, the detective asked you about your Internet history, correct?" *Id.* at 4–6.  His counsel objected, and the following bench conference occurred:

> MR. THOMAS: Your Honor, this is an attempt by the government to bring in his Internet browser history, which showed that he looked at legal pornography at various times, which is -- which he did not lie about. He told the officer that he looked at pornography. And --
>
> THE COURT: Yeah, I think that's in evidence, that he said he did --
>
> MS. KOROBOV: May I show the Court what it is that we're talking about?
>
> THE COURT: Yes.

MS. KOROBOV: Because the defendant has now testified that he -- that he lied to the detective, yes, but, "I wouldn't hurt [CV1] or any child." The sites referenced in here are incest pornography, which I would contend is perhaps not at all legal. But, regardless, if his testimony is, "I wouldn't hurt any child" -- and, additionally, he's admitted at this point to every element of production except intent. So at this point his intent becomes relevant.

MR. THOMAS: Your Honor, this is not illegal pornography. These are not things that have been charged. The dates on these have nothing to do with this case. This is an attempt to taint the jury. There's been no evidence regarding this at all. And there's no evidence that looking at legal pornography indicates you're going to hurt a child. It's prejudicial.

MS. KOROBOV: The question is whether it's unfairly prejudicial. The defendant said, "I would never hurt any child." And given the images here -- and, additionally he told the detective that he -- that he would look at Reddit[3] and he used Reddit to look at porn, and that sometimes there would be incest sites on there, "but I didn't go to any of them." Well, that's a lie, so it goes to his credibility. It goes to show, as well, what his intent was at the time he took those photographs.

MR. THOMAS: I didn't ask him any questions about his history on direct, first of all. The fact that --

THE COURT: You did ask him had he ever hurt any other child, which wasn't a good question to ask.

MR. THOMAS: I'm sorry, but the government's contention that looking at legal pornography is hurting a child is not true.

THE COURT: Well, it says incest. Is that legal? Incest is a crime.

MR. THOMAS: That is all legal. No one is having incest in that pornography. It's all -- it's all fake. I've dealt with those cases before, Your Honor. That's not --

THE COURT: You've seen these videos?

MR. THOMAS: I've certainly not seen those particular videos, but if the government is alleging new crimes here, that he committed a crime in looking at these videos, they know for a fact, as an officer of the court, she knows that's not

---

[3]"Reddit is a social news website and forum where stories are socially curated and promoted by site members. The site name is a play on the words 'I read it.' [It] is composed of hundreds of sub-communities, known as 'subreddits.' Each subreddit has a specific topic such as technology, politics or music. Reddit site members, also known as 'redditors,' submit content which is then voted upon by other members. The goal is to send well-regarded stories to the top of the site's main thread page." *Oxebridge Quality Resources Int'l, LLC v. Smith*, No. 8:15-cv-11-T-17TBM, 2016 WL 11491577, at *4 n.6 (M.D. Fla. July 28, 2016) (internal quotation marks and quoted authority omitted), *report and recommendation adopted Smith*, dkt. 105 (M.D. Fla. Sept. 14, 2016).

illegal, Your Honor. She's being disingenuous with the Court. She knows that that's not illegal.

THE COURT: Did you look at -- do you know what these are?

MS. KOROBOV: Do I know --

THE COURT: Did you all see what they are?

MS. KOROBOV: No. We haven't gone to those sites.

THE COURT: Okay.

MS. KOROBOV: The issue isn't, quite frankly, whether he -- whether the porn is legal or illegal. That's not my issue. If it's legal, I don't care one way or the other. The issue is, "I would never hurt any child." This is his area of interest. If he's saying that, "When I pulled down her pants, it was just to take photos to document injuries as opposed to I was sexually interested in that child," there it is.

***

MR. THOMAS: There's no evidence that anything that he looked at involved children at all.

THE COURT: Oh, you're saying it might be adult incest?

MR. THOMAS: Yeah.

***

MR. THOMAS: If it was children -- if it's child pornography, he would be charged. None of it is child pornography, Your Honor.

THE COURT: "The First Time with My Daddy."

MS. KOROBOV: "The First time with My Daddy," who --

MR. THOMAS: Well, listen --

THE COURT: Okay. Listen, this is what I will let you do. Don't – don't get that in, but you can read the titles of those three, and the date --

MR. THOMAS: What?

THE COURT: -- to show –

12

MR. THOMAS: What -- and just so I'm clear for the record, Your Honor, what is the government relying on to show --

THE COURT: You're offering those to show what?

MS. KOROBOV: I'm using it to show, first of all, his intent when he took the photographs of [CV1]. And I'm also using it to contradict his statement to counsel that, "I would never hurt [CV1] or any child." And, finally, it goes to show that when he talked to the detective and he said, "Oh, yes, I go to Reddit, but not to these sites," that that was a lie. It's another thing he lied about. His credibility is the sole issue here today.

MR. THOMAS: Well, Your Honor, if I may respond, first of all, I will again object that looking at legal pornography, it's not evidence that you have hurt a child. So the idea that he opened the door to his looking at legal pornography -- and if she wants to say --

THE COURT: It's just the title, the title, "My First Time with Daddy."

***

THE COURT: What's it say?

MS. KOROBOV: "B.S. Used to Play Truth or Dare as Young Kids."

MR. THOMAS: He didn't have anything to do with creation of this pornography. He looked at it legally on the Internet. He didn't hurt a child by doing that.

THE COURT: Agree, but she's -- well, she's trying to show that his intent in this case was for sexual-- … lascivious purposes.

MR. THOMAS: There's no evidence that any of that is child pornography. In fact, the evidence is the opposite, and the government knows it. None of this is child pornography. The implication from those titles, which he had nothing to do with creating, is that it is child pornography. The fact is, it is not. None of it is, and the government knows it.

THE COURT: Where is the one that says, "Young Child?"

***

MR. THOMAS: I don't care what the titles say, Your Honor. This is legal pornography.

THE COURT: We're just going by the titles. That's fine.

13

\*\*\*

MR. THOMAS: Your Honor, this is legal pornography. The government --

THE COURT: Okay. I'll let you ask him about one, "I'm Attracted to My Little Sis."

MR. THOMAS: And is this -- and how is this related to direct?

MS. KOROBOV: On direct, you were asking your client questions, and the very last thing that your client said to the jury is, "I would never hurt [CV1] or any child." Additionally, he repeatedly put his intent at issue. "It wasn't for sexual attraction, it was because I was documenting an injury."

THE COURT: So, for intent, the Court is going to allow it.

(Cr. Dkt. 121 at 323:11–329:16).

The Government then asked the following series of questions:

Q. Detective McAllister asked you some questions regarding the use of the Website Reddit, correct?

A. Correct.

Q. And you responded to his questions about your use of the Website Reddit, correct?

A. Correct.

Q. Specifically he asked you questions about certain types of Web sites on Reddit, or certain links to Reddit, correct?

A. Yes.

Q. And you told him that you didn't visit any particular sites on Reddit that were anything beyond, like, legit porn, correct?

A. I did say that, yes.

Q. But on August 14th of 2014, you visited a specific portion of Reddit with the title          "reddit.com/R/incest/comments/2DV--2DEVPQ/SS_I'm_attracted_ to_my_little_sis_2," correct?

\*\*\*

A. I guess.

14

***

THE COURT: And, ladies and gentlemen of the jury, that evidence is offered for the limited purpose of showing intent.

*Id.* at 330:5–331:5.

On re-direct, Al-Awadi's counsel asked him the following series of questions:

Q. How old were you at the time of this incident?

A. 20 years old.

Q. Did you look at porn when you were 20?

A. Yes.

Q. Was any of it child porn?

A. No.

Q. Were any of the Websites that you ever visited child porn?

A. No.

***

Q. Do you think if you had viewed child pornography on the same telephone that [law enforcement] examined down to its core, that you would not have been charged with that?

A. No.

Q. And, in fact, you were not, were you?

A. No.

Q. Because you had never looked at child pornography, did you?

A. No.

*Id.* at 331:11–19, 332:24–333:7.

After Al-Awadi's testimony, the Court recessed for the day without Al-Awadi formally resting. *Id.* at 341:18–21, 344:25–345:4. The next day, Al-Awadi rested his case, and counsel made their closing arguments.

The jury ultimately found Al-Awadi guilty of, and the Court entered judgment against him on, three counts of sexually exploiting a minor through the production of child pornography and one count of attempted sexual exploitation of a minor through the production of child pornography. (Cr. Dkt. 63 (second superseding indictment), Cr. Dkt. 85 (jury verdict form), Cr. Dkt. 105 (judgment)). The Court sentenced Al-Awadi to concurrent terms of 324 months' imprisonment for each count, as well as concurrent 15-year terms of supervised release per count. (Cr. Dkt. 105.) At the sentencing hearing, the parties discussed a potential enhancement for obstruction of justice based on Al-Awadi's deletion of the images of CV1 and statements he made to the investigating detective. (Cr. Dkt. 124 at 4:7–15:6.) During that discussion, this exchange occurred:

> MR. SHEPARD: There was also significant communication about what may be on the cell phone. There was discussion of the Reddit app. The defendant even offered that there were incest tabs, but he never look at -- never looked at them.
>
> The government would offer Government's Exhibit 1 . . . . That was a trial exhibit that wasn't admitted. By way of proffer, this is approximately 70 pages of his browsing history from the cell phone . . . . And on every single one of these selected pages, there is a clicked-on tab about an incest story. So there was another lie that was given to the detective.
>
> \*\*\*
>
> THE COURT: None of this is child pornography, correct?
>
> MR. SHEPARD: We don't know. Some of the titles, as the Court reviewed when we were there, would suggest. All that was able to be recovered was the titles.
>
> \*\*\*
>
> MR. THOMAS: As to Government's Exhibit 1 . . .[t]hey attempted to offer this, they certainly referred to it. The . . . Assistant United States Attorney said, "Well,

we don't know if this is child pornography," trying to imply, I guess, to the Court that it is. It's not.

If they don't know, it's because they haven't tried to know. He's referred to it himself as "stories." Incest stories are not child pornography. There is nothing in this list that indicates that any of this is child pornography . . . .

THE COURT: I agree with you, Counsel. I will not consider Government's Exhibit 1 . . . . I will not consider it as child pornography.

*Id.* at 10:19–11:6, 12:1–5, 13:11–14:1.

Al-Awadi appealed his conviction. (Cr. Dkt. 107.) New counsel appeared on his behalf. *United States v. Al-Awadi*, No. 16-2643 ("App. Dkt.") (Dkts. 5, 8.) Counsel raised three issues: (1) whether the trial court improperly instructed the jury about evidence of other acts; (2) whether the trial court improperly admitted certain evidence about CV1's alleged molestation; and (3) whether the evidence was sufficient to support the convictions because it was not clear which body part was depicted in the photographs Al-Awadi took. *United States v. Al-Awadi*, 873 F.3d 592, 596– 601 (7th Cir. 2017). In a 15-page published opinion, the Seventh Circuit affirmed Al-Awadi's convictions. *Id.*; *see also* App. Dkt. 26. In discussing the second issue, the court held that evidence that Al-Awadi molested CV1 within seconds of taking the photographs was relevant to show that Al-Awadi had a sexual motive for taking them. *Al-Awadi*, 873 F.3d at 599. In discussing the third issue, the Seventh Circuit stated:

> Sufficient evidence supports the convictions here. Al-Awadi does not dispute that the photographs are in fact of CV1's nude genital area, and he acknowledged at trial that he pulled back CV1's clothing to focus on her genital area when taking the photographs. The jury also heard that he had previously shown an interest in CV1—the two called each other "Little Baby," for example—and that he had prior interest in child pornography. The latter facts were relevant in assessing the images and in particular in determining whether the images were "for the purpose of eliciting a sexual response in the viewer" because Al-Awadi had "disclaimed any intent to create a sexually suggestive image." There was sufficient evidence for the jury to conclude that Al-Awadi took the photographs of CV1's genital area for the purpose of eliciting a sexual response in him.

17

*Al-Awadi*, 873 F.3d at 601 (internal citations omitted).

Represented by a new attorney, Al-Awadi filed a motion for relief under § 2255.  (Dkts. 1, 2.)  With his motion, he submitted evidence showing that the content associated with the Reddit page name read into the record at trial ("reddit.com/R/incest/comments/2DV--2DEVPQ/ SS_I'm_attracted_ to_my_little_sis_2,") was not child pornography, but rather a fictional story about adult sisters that included lesbian content.  (Dkt. 1-1.)  The Government responded in opposition, contending in part that the nature of Reddit made it impossible for the Government to determine what that particular Reddit page said when Al-Awadi originally viewed it in 2014.  (Dkt. 12.)  In reply, Al-Awadi submitted an affidavit from a cybersecurity professional who stated that the content of the original Reddit page could be recovered, that she had recovered it, and that the content of the page had not changed since it was originally posted.  (*See* Dkts. 17, 17-1.)

### III.   DISCUSSION

Al-Awadi raises three grounds for relief: (1) prosecutorial misconduct; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel.  (Dkt. 1.)  The Court discusses these grounds separately.

### A.   Prosecutorial Misconduct

Al-Awadi contends that he was deprived of due process of law and a fair trial in violation of the Fifth Amendment to the United States Constitution because the prosecution committed misconduct.  (Dkt. 1 at 4; Dkt. 2 at 1–5.)  Specifically, he contends that the prosecution suggested to the Court and the jury that the Reddit page with "I'm attracted to my little sis" in its title ("the Reddit page") indicated his interest in child pornography when it knew or should have known that the page had no videos or photographs but was simply a fictional story about adult sisters that

18

included lesbian content. *Id.* Alternatively, he contends that the prosecution must have known the actual content of the page at least by the time of the sentencing hearing because the prosecutor referred to the page as a "story." (Dkt. 2 at 3–4.) In response, the Government argues that Al-Awadi procedurally defaulted this issue by failing to raise it at trial and on appeal. (Dkt. 12 at 13–19.)

"Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017). Constitutional claims may, however, be raised for the first time in a collateral attack if the petitioner can show cause for the procedural default and prejudice from the failure to appeal. *Id.*[4]

Here, Al-Awadi concedes the procedural default but asserts that he can show cause and prejudice.

### 1.   <u>Cause for the Procedural Default</u>

Al-Awadi contends that he can show cause for the procedural default of his prosecutorial-misconduct claim. To show cause for a procedural default, the petitioner must demonstrate that some objective factor external to the defense impeded his efforts to bring a claim on direct appeal. *Coleman v. Thompson,* 501 U.S. 722, 753 (1991), *holding modified on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012).

Al-Awadi asserts that he has cause because the prosecutorial misconduct issue "was so inextricably linked to extrinsic evidence that it could not have been properly raised and considered

---

[4]Procedurally defaulted constitutional claims can also be considered on collateral review if the petitioner shows actual innocence, *see Delatorre*, 847 F.3d at 843, but Al-Awadi makes no argument for actual innocence.

on direct appeal." (Dkt. 1 at 4; Dkt. 17 at 1.)[5] Al-Awadi does not specify what the missing "extrinsic evidence" was that prevented appellate counsel from raising the issue on appeal, but it appears to be the content of the Reddit page that he now seeks to bring before the Court for the first time.

The Seventh Circuit rejected a similar argument in *Delatorre*. In that case, the petitioner argued that the prosecutor engaged in misconduct by reneging on a promise to provide him with a plea deal. *Delatorre*, 847 F.3d at 843. He did not raise the issue at trial or on direct appeal; instead, he raised it for the first time when he filed his § 2255 motion. *Id.* The Seventh Circuit concluded that the procedural default was not excused because the petitioner was aware of all the facts giving rise to the alleged violation before trial and nothing happened after his trial or direct appeal that altered his potential claim. *Id.* at 843–44. The petitioner argued that, like most claims of ineffective assistance of counsel, his claim of prosecutorial misconduct was "so inextricably linked to extrinsic evidence that it would not have been properly raised on appeal." *Id.* at 844. The court rejected the analogy to an ineffective-assistance-of-counsel claim, reasoning:

> [The petitioner's] prosecutorial-misconduct claim . . . does not, by its very nature, require augmentation of the record. The only reason extrinsic evidence is required to prove his claim is because *he* failed to raise this claim in the first place. Had he raised this claim at the proper time—in the district court before he was convicted— his evidence supporting that claim would have been considered on direct appeal . . . . [W]e refuse to reward [the petitioner] for *his* creation of an evidentiary issue.

*Id.* (Emphasis in original.)

---

[5]Contrary to the Government's argument, (*see* Dkt. 12 at 13–14), Al-Awadi did not waive his reliance on this exception by failing to raise it before the reply. As Al-Awadi notes, his § 2255 motion states that this issue was not raised on direct appeal because "it was so inextricably linked to extrinsic evidence that it could not have been properly raised and considered on direct appeal." (Dkt. 1 at 4.)

The rationale of *Delatorre* applies here.  The bench conference about this issue and Al-Awadi's testimony on re-direct show that he and his counsel had all the information necessary to support his current prosecutorial-misconduct claim during trial.  Indeed, Al-Awadi's trial counsel made the same arguments Al-Awadi currently urges in his § 2255 motion—that the Reddit page was not child pornography but rather involved fictional adult incest, that the title of the Reddit page did not suggest that Al-Awadi was interested in child pornography, and that the Government knew the page was not child pornography and was "being disingenuous" with the Court.  In addition, Al-Awadi himself knew that the Reddit page was not child pornography because he testified that he had not viewed child pornography.  The content of the page itself is not in the record, but that is because Al-Awadi failed to place them in the record.  Under *Delatorre*, the "extrinsic evidence" exception does not excuse the procedural default.

Al-Awadi attempts to distinguish *Delatorre*, arguing that the petitioner in *Delatorre* knew about the prosecutorial misconduct well before trial, whereas his "awareness of the prosecutorial misconduct came . . . at the very end of trial, during the cross-examination of [Al-Awadi]."  (Dkt. 17 at 2.)  He contends that "in the midst of trial, he could not easily have gone to the Web address about which the court had allowed the government to cross-examine Al-Awadi, obtained a printout of the page, and on the basis of this raised this claim again at . . . the proper time."  *Id.* (internal quotation omitted).[6]

---

[6]Al-Awadi also acknowledges that his trial counsel *did* raise the prosecutorial-misconduct issue in the trial court.  (*See* Dkt. 17 at 2 ("And Al-Awadi's trial counsel *did* in fact argue to the Court in so many words that the prosecutor was committing misconduct, but to no avail.").)  This argument comes close to conceding that no extrinsic evidence was necessary to press the prosecutorial-misconduct claim.  If no extrinsic evidence was necessary to press the claim, then it could have been raised on direct appeal but was not.  Other than his ineffective-assistance-of-appellate-counsel claim (which fails, as discussed below), Al-Awadi fails to explain why his failure to raise this issue on direct appeal should be excused.

But Al-Awadi's trial occurred in 2016; accessing an internet page was not a difficult or time-consuming task in 2016. His counsel had the address for the Reddit page and could simply have asked for a brief recess to obtain a copy so that he could further press his prosecutorial misconduct claim. He did not do so.[7] Additionally, the Court recessed for the day after Al-Awadi's testimony without counsel formally resting Al-Awadi's case. The next day, Al-Awadi's counsel rested, and closing arguments were heard. Al-Awadi's counsel could have obtained a printout of the Reddit page during that overnight break and pressed the prosecutorial-misconduct claim when proceedings resumed the next day. He did not do so. "The question is . . . whether [the petitioner] could have [raised the issue] and simply failed without cause to do so." *Theodorou v. United States*, 887 F.2d 1336, 1340 (7th Cir. 1989) (internal quotation omitted) (finding no cause for the procedural default of a claim based on inaccurate information in a presentence investigation report where the petitioner and his counsel knew about the inaccurate information before sentencing). Al-Awadi could have introduced the printout of the Reddit page at trial but failed without cause to do so. Thus, his procedural default of this issue is not excused based on the "extrinsic evidence" exception.

Al-Awadi argues, alternatively, that his procedural default is excused because his trial counsel's failure to obtain the printout and move for a mistrial or new trial amounted to ineffective assistance of counsel. (Dkt. 17 at 3.) Ineffective assistance of counsel can constitute cause for a procedural default. *Coleman*, 501 U.S. at 753–54. As explained below, however, Al-Awadi's

---

[7]Notably, when Al-Awadi's counsel raised a possible *Brady* violation earlier in the trial, the Court offered him a continuance to investigate and develop the information. (Cr. Dkt. 121 at 80:19–81:6.)

ineffective assistance of trial counsel claim fails.  Because Al-Awadi has not shown cause for his procedural default, his prosecutorial-misconduct claim is barred.

### 2.   __Prejudice from the Procedural Default__

Even if Al-Awadi could show cause for his procedural default of the prosecutorial misconduct claim, it would be barred because he has not established prejudice.  To excuse a procedural default, a petitioner must show actual prejudice from the failure to raise the issue. *Farmer v. United States*, 867 F.3d 837, 842 (7th Cir. 2017); *Mankarious v. United States*, 282 F.3d 940, 943–44 (7th Cir. 2002).  To establish actual prejudice, a petitioner "must shoulder the burden of showing[] not merely that the errors at [his] trial created a *possibility* of prejudice, but that they worked to [his] *actual* and substantial disadvantage, infecting [his] entire trial with error of constitutional dimensions." *Farmer*, 867 F.3d at 944 (internal quotation marks and quoted authority omitted; emphasis added).  That is, a petitioner must convince the court that "there is a reasonable probability that the result of the trial would have been different." *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) (internal quotation marks and quoted authority omitted).

Al-Awadi cannot meet this high standard.  He assumes that, if the Court had known about the real content of the Reddit page, it would have prevented the Government from asking Al-Awadi about its title based on a finding that the title falsely suggested he had an interest in child pornography.  Al-Awadi does not dispute the general proposition that evidence of an interest in child pornography would have been admissible to show his intent in taking the photographs of CV1. *See, e.g.*, *United States v. Schuster*, 706 F.3d 800, 808 (7th Cir. 2013) (discussing evidence that defendant collected child pornography in discussing evidence about his intent in taking a picture of a child).  Thus, his prosecutorial misconduct argument rises and falls on his argument

that the title of the Reddit page was "demonstrably false evidence" and, therefore, inadmissible because it did not, standing alone, evidence a sexual desire in children.  (Dkt. 1 at 4; Dkt. 17 at 6).

Al-Awadi's argument fails.  Even though the Court did not see the content of the Reddit page, it knew that the Reddit page did not necessarily contain child pornography and might have portrayed only fictional incest between adults—indeed, this was discussed during the colloquy at the bench.  (Cr. Dkt. 121 at 326).  With that knowledge, it properly allowed the Government to question Al-Awadi about the Reddit page title because—regardless of the page's content—the fact that Al-Awadi visited a Reddit page titled "I'm attracted to my little sis" suggested an interest in child pornography, even if the page did not turn out to contain child pornography.  Put another way, the fact that Al-Awadi chose to visit a Reddit page with that title was relevant because it had "had a tendency to make" it "more . . . probable" that he was interested in child pornography than it would have been without the evidence.  Federal Rule of Evidence 401.  The Reddit page title was not, as Al-Awadi asserts, "demonstrably false evidence," and it was not inadmissible on relevancy grounds.[8]

---

[8]In addressing this ground for relief, Al-Awadi does not argue that the Reddit page title should have been excluded as unfairly prejudicial under Federal Rule of Evidence 403.  In discussing his ineffective assistance of appellate counsel argument, however, Al-Awadi argues that there is a reasonable probability that the result of his trial would have been different if the Reddit page title had been excluded because the title referred to incest and, thus, was "used to make him disgusting to the jury." (Dkt. 17 at 11–12.)  His argument on this point consists entirely of a block quotation from a concurring opinion in a Ninth Circuit case, *United States v. Curtin*, 489 F.3d 935, 964 (9th Cir. 2007) (Kleinfeld, J., concurring). To the extent Al-Awadi contends that the Reddit page title should have been excluded under Rule 403 simply because it referred to incest, his reliance on *Curtin* is misplaced. The facts of *Curtin* are distinguishable. Among other things, in *Curtin*, the district court considered reading materials in a defendant's possession and admitted five complete stories including descriptions of incest between adults and children as well as graphic discussions of other lewd acts (such as bestiality). 489 F.3d at 936, 942, 956–57. It admitted the five stories despite having read only two of them in full. *Id.* at 956. Here, the Court only allowed the Government to question Al-Awadi verbally about one Reddit page title. The danger of unfair prejudice in *Curtin* was much greater. Regardless, *Curtin* does not, as Al-Awadi suggests, stand for the proposition that the mere mention of incest in a defendant's reading materials merits exclusion of evidence under Rule 403 where the case does not otherwise involve allegations of incest. Notably, the *Curtin* majority remanded the case to the district court for retrial and encouraged the district court, on retrial, to read the stories in their entirety and to "reevaluate their unedited admissibility in light of Rule 403's concerns about redundancy." *Id.* at 958.

Al-Awadi focuses on the actual content of the page, (Dkt. 2 at 3), but the Court did not admit the content of the page.  Al-Awadi also argues that the reference to "little sis" did not necessarily refer to a child, (Dkt. 17 at 6), but that argument goes to the weight of the evidence about the title, not its admissibility.  His counsel was free to attempt to undermine any inference to be drawn from the title, and he did, by asking Al-Awadi whether he had ever viewed child pornography and whether he was charged with possessing any other child pornography.[9]

Because Al-Awadi cannot show prejudice from the procedural default of the prosecutorial-misconduct issue, the procedural default is not excused, and the claim is barred.

## B.  Ineffective Assistance of Trial Counsel

Al-Awadi also contends that his trial counsel was ineffective. A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *United States v. Jones*, 635 F .3d 909, 915 (7th Cir. 2011).  If a petitioner cannot establish one of the *Strickland* prongs, the court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014).  To satisfy the first prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* In order to satisfy the

---

[9]Given the subject-matter, it is perhaps understandable that Al-Awadi's trial counsel did not pursue the matter further by introducing a copy of the story itself or further questioning Al-Awadi about the content of the Reddit page.  Such strategic decisions are generally left to the discretion of trial counsel, and Al-Awadi does not argue that the failure to provide the jury with more detail about the content of the Reddit page constituted ineffective assistance of counsel. Instead, he focuses entirely on trial counsel's failure to provide the Court with a copy of the page. (Dkt. 17 at 9.)

prejudice component, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Each of Al-Awadi's two specifications of ineffective assistance of trial counsel is discussed below.

      1.    <u>**Agent Johnson's Testimony**</u>

          a.    <u>**Counsel's Performance**</u>

Al-Awadi contends that his trial counsel's performance fell below objective standards for reasonably effective representation because his trial counsel failed to object to the "unhelpful" testimony of Agent Johnson. (Dkt. 1 at 5.) Specifically, Al-Awadi complains that the Government cited Agent Johnson's testimony in its appellate brief to support the proposition that Al-Awadi's "motive 'to memorialize the molestation' proved the photographs lascivious." (Dkt. 2 at 5–6 (citing App. Dkt. 13 at 23).) He focuses this argument on the fact that one of the trial transcript's pages the Government cited to support this proposition was the page on which Agent Johnson testified about his experience. *Id.* at 5–6 (focusing on citation to trial transcript page 526 (in the record as Dkt. 121 at 195)). This is a complaint about the Government's argument on appeal, and Al-Awadi fails to explain how the Government's appellate brief demonstrates that his trial counsel was ineffective. Regardless, Al-Awadi neglects to mention that the Government also cited page 540 of the trial transcript to support this proposition. (*See* App. Dkt. 13 at 23.) On that page of the trial transcript, Agent Johnson testified that it would be important to know whether photographs were taken during the course of the molestation because that fact would suggest that the intent of the photographs was to memorialize the molestation. (Dkt. 121 at 209.) To the extent Al-Awadi

faults his trial counsel for failing to object to this testimony, Al-Awadi fails to explain what was objectionable about this testimony, and the Court sees nothing objectionable about it.

Al-Awadi also singles out Agent Johnson's testimony that "[h]aving special names for a child" is a type of "grooming" behavior.  (Dkt. 2 at 6.)  Al-Awadi's trial counsel was not ineffective for failing to object to this testimony.  An attorney cannot be ineffective for failing to present an issue that is certain to fail.  *See Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims."); *United States v. Carter*, 355 F.3d 920, 924 (7th Cir. 2004) ("First, counsel cannot be said to be deficient for failing to take frivolous action, particularly since a frivolous effort takes attention away from non-frivolous issues.  Second, it is evident that failing to make a motion with no chance of success could not possibly prejudice the outcome.").

Here, any objection to Agent Johnson's testimony was certain to fail.  At the time of trial, Agent Johnson was a law enforcement professional who had investigated hundreds of cyber child exploitation crimes. The Seventh Circuit has concluded that a law enforcement officer's "[t]raining and experience are proper foundations for expert testimony" and that "extensive experience investigating internet crimes against children" may qualify a law enforcement officer as an expert. *United States v. Parkhurst*, 865 F.3d 509, 517 (7th Cir. 2017), *holding modified on other grounds by United States v. Jett*, 908 F.3d 252 (7th Cir. 2018).  And, contrary to Al-Awadi's argument, (*see* Dkt. 2 at 6–7), Agent Johnson's testimony about grooming was helpful to the jury because it helped jurors understand that seemingly innocuous conduct (like using pet names and introducing a camera by taking photographs) might be indicative of criminal intent, *see Parkhurst*, 865 F.3d at 516 (finding law enforcement testimony about "keywords" used to target minors without

27

running afoul of Craigslist regulations helpful because it "helped the jury apply to the evidence alternative theories of which they ordinarily may not have been aware"); *see also United States v. Christian*, 673 F.3d 702, 711 (7th Cir. 2012) ("Although at first glance, [the agent's] testimony that [the defendant's] arm movements were consistent with tossing an object may appear to be a matter of common sense, a more deliberate consideration of the testimony suggests otherwise. What might seem like innocuous conduct to an untrained jury, might, to the trained eye, be indicative of criminal activity.").

To the extent Al-Awadi's contention that Agent Johnson's testimony was "unhelpful" can be read to extend beyond the "grooming" testimony, he fails to explain what, exactly, was unhelpful about Agent Johnson's testimony. To support his argument that Agent Johnson's testimony was unhelpful, and therefore inadmissible, he cites to *United States v. Noel*, 581 F.3d 490, 496–98 (7th Cir. 2017).  (*See* Dkt. 2 at 6.)  In *Noel*, the Seventh Circuit held that an expert's unsupported and bare conclusion that the images on a defendant's computer were child pornography under the federal definition was unhelpful and improper because that testimony "provided nothing but the bottom line" without substantiation.  *Id.*  But the Government did not ask Agent Johnson whether the photographs Al-Awadi took of CV1 were pornography.  It did not ask Agent Johnson to opine about Al-Awadi's intent in taking the photographs. It did not even ask Agent Johnson whether the photographs met the definition of a "lascivious exhibition." Instead, Agent Johnson testified generally about the meaning of the federal definitions of child pornography, sexually explicit conduct, and lascivious exhibition. He then opined that the focus of three of the photographs was the pubic area of CV1—a conclusion that Al-Awadi did not dispute because he claimed that he was trying to document suspected injuries to CV1's pubic area. Agent

Johnson also testified that, if photographs were taken during the course of a child molestation, then that fact would be relevant because it would suggest that they were taken to memorialize the molestation. On cross-examination, Al-Awadi's counsel elicited an opinion from Agent Johnson about whether the images were child pornography, but, read in conjunction with the rest of his testimony, Agent Johnson explained that opinion. He also readily admitted that he had no actual knowledge of whether Al-Awadi sexually molested CV1 and that the images would not be child pornography if they were taken for a non-sexual purpose. This is not a case, like *Noel*, where the expert simply opined to the "bottom line" without substantiation. Al-Awadi also cites *United States v. Brown*, 871 F.3d 532, 538 (7th Cir. 2017), to make the blanket conclusion that this "case provides a textbook example of easily comprehensible facts" and that Agent Johnson's testimony "added nothing that the jurors could not ascertain on their own." Dkt. 2 at 6. *Brown* involved proposed expert testimony about an officer's use of force and is, thus, factually distinguishable. 871 F.3d at 538–39. Absent further argument from Al-Awadi, the Court is not obligated to scour Agent Johnson's testimony for additional, possibly "unhelpful" content. For these reasons, the Court confirms that Agent Johnson's testimony regarding definitions was relevant and admissible, and Al-Awadi's trial counsel was not ineffective for failing to object to it. *See Warren*, 712 F.3d at 1104; *Carter*, 355 F.3d at 924.

Al-Awadi contends that testimony about "grooming" children for later sexual activity amounts to "scientific" evidence that should require a foundational showing of scientific validity, which was lacking here. (Dkt. 2 at 6.) To support this proposition, he relies on a single case from the Oregon Supreme Court, which was decided after Al-Awadi's trial. *Id.* (citing *State v. Henley*, 422 P.3d 217 (2018)). The *Henley* court did not, however, categorically hold that all testimony

about "grooming" requires a foundational showing of scientific validity. Instead, it explained that determining whether testimony is "scientific" is fact-sensitive and largely depends on whether the trier of fact would perceive it as being grounded in science. *Id.* at 224–26. On the particular facts of the case, the *Henley* court concluded that the jury would have perceived an expert's testimony about grooming as scientific and that the trial court erred in allowing her to testify without requiring the government to making a showing of scientific validity. *Id.* at 226– 28. The facts of *Henley* differ significantly from the facts of this case,[10] and Al-Awadi fails to explain why *Henley*'s fact-sensitive analysis would result in a conclusion that Agent Johnson's testimony was "scientific". Notably, since *Henley*, the Court of Appeals of Oregon has applied an analysis akin to plain-error review and concluded that a detective's testimony about grooming based on his "training and experience as a detective" was not obviously "scientific" evidence that required a scientific foundation. *Oregon v. Smith*, 452 P.3d 492, 494–95 (Or. Ct. App. 2019).

Moreover, even if *Henley* could be read to require a scientific foundation for testimony about grooming from law enforcement officers in all cases, its holding arguably conflicts with Seventh Circuit precedent. In *Parkhurst*, the defendant contended that a detective's testimony about "keywords" used to target minors in Craigslist ads without running afoul of the site's regulations required a foundational showing of scientific reliability. 865 F.3d at 516. The Seventh Circuit found the reliance on scientific-reliability factors misplaced because the testimony was

---

[10]The differences are too numerous to include, but the Court notes here that the expert in *Henley* was a forensic interviewer with degrees in social work, not a law enforcement officer. 422 P.2d at 220. Moreover, the Oregon Supreme Court concluded that her testimony "implied that the training she had received on grooming, and the information about grooming from that training that she conveyed to the jury, was accepted and grounded in behavioral science." *Id.* at 228. Agent Johnson's testimony carried no such implication that his testimony about grooming was grounded in science.

based on the detective's "extensive training and experience in over twenty-five investigations involving internet crimes against children," reasoning that "[t]raining and experience are proper foundations for expert testimony and noting that it had "repeatedly allowed such expert testimony without requiring 'scientific methodologies' or 'peer review.'" *Id.* Here, Agent Johnson's testimony was based on his training and experience as an investigator of crimes against children. Such was a proper foundation for expert testimony, and Al-Awadi's counsel was not ineffective for failing to make a futile argument that Agent Johnson's testimony required a foundational showing of scientific reliability. *See Warren*, 712 F.3d at 1104; *Carter*, 355 F.3d at 924.

Al-Awadi's other arguments that trial counsel's performance fell below objective standards of effective representation can be dismissed out of hand. He contends that "the issue of whether photos are child pornography is an inappropriate topic for expert testimony altogether," citing *United States v. Thoma*, 726 F.2d 1191 (7th Cir. 1984).[11] (*See* Dkt. 2 at 6.) But *Thoma* did not hold that it was always inappropriate for an expert to testify as to whether photos are child pornography. *See* 726 F.3d at 1200 (concluding that expert testimony was not required to establish that the video tapes in that case appealed to the prurient interest of pedophiles because the tapes were sufficient evidence of their own prurient appeal). And, even if it did, the Government did not ask Agent Johnson whether the photographs Al-Awadi took were child pornography, or even whether they constituted a "lascivious exhibition."[12] Al-Awadi also contends that Agent

---

[11]On this point, Al-Awadi improperly suggests that the *Noel* court cited *Thoma* for the proposition that child pornography is an inappropriate topic for expert testimony. (*See* Dkt. 2 at 6 (noting that *Thoma* was cited by *Noel*).) That is incorrect. The Seventh Circuit noted that the defendant "cite[d] [*Thoma*] for the proposition that whether photos are child pornography is an inappropriate topic for expert testimony altogether." *Noel*, 581 F.3d at 497 n.6. It then declined to reach that issue. *Id.*

[12]Al-Awadi's trial counsel elicited such testimony from Agent Johnson on cross-examination, but he does not contend that those questions amounted to ineffective assistance of counsel.

31

Johnson's testimony "crossed the line drawn in [Federal Rule of Evidence] 704(b), which prohibits expert opinion about a criminal defendant's state of mind." (Dkt. 2 at 7.) But, again, the Government did not ask Agent Johnson to opine about Al-Awadi's state of mind, and he did not do so on direct examination.[13]

Ultimately, Agent Johnson's testimony was not improper, and Al-Awadi's trial counsel was not ineffective for failing to object to it. *See Warren*, 712 F.3d at 1104; *Carter*, 355 F.3d at 924. Thus, this ineffective assistance of counsel claim fails.

### b.   Prejudice

Even if Al-Awadi could establish that his trial counsel's representation fell below objective standards of effective performance when he failed to object to Agent Johnson's testimony, he has not shown prejudice. To demonstrate prejudice, he must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. This requires Al-Awadi to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Al-Awadi has not met this standard. The only issue at trial was Al-Awadi's intent when he took the photographs of CV1: was he trying to memorialize a child molestation or was he trying to inspect a suspected injury? Even without Agent Johnson's testimony, there was sufficient evidence of Al-Awadi's intent—specifically, the evidence establishing that Al-Awadi was

---

[13]Instead, Agent Johnson opined only that the focus of the photographs was CV1's pubic area (a point that Al-Awadi did not dispute); that the fact that a picture was taken during a child molestation would suggest an intent to memorialize the molestation (another point that Al-Awadi does not dispute); that having pet names could be a form of grooming behavior; and that the undated picture of Al-Awadi with CV1 could be consistent with grooming. Again, Al-Awadi's counsel elicited testimony from Agent Johnson about Al-Awadi's intent on cross-examination, but Al-Awadi does not contend that that line of questioning amounted to ineffective assistance of counsel.

molesting CV1 within seconds of taking the photographs of her, which supports the inference that he had a sexual motivation for taking the photographs.  *See Al-Awadi*, 873 F.3d at 599.  Al-Awadi also admitted that he deleted the photographs and then lied about their existence, supporting the inference that they were not taken for a legitimate purpose.  *Cf. United States v. Miller*, 829 F.3d 519, 526 (7th Cir. 2016) (defendant's lie to cover up his behavior supported the inference that the videos at issue were not made for a legitimate purpose and, thus, were lascivious).  Against the weight of that evidence, Agent Johnson's testimony was, as the Government argues, a "drop in the bucket," (*see* Dkt. 12 at 23,) and Al-Awadi cannot show that the result of his trial was unreliable or that there is a reasonable probability that the result of the proceeding would have been different had his counsel objected to Agent Johnson's testimony.  Thus, he cannot show prejudice.  *See Cooper v. United States*, 378 F.3d 638, 642 (7th Cir. 2004) (concluding that petitioner could not show prejudice from counsel's failure to object to certain evidence because there was sufficient evidence apart from the objectionable evidence to support the reliability of the jury's verdict).

Al-Awadi rejects this conclusion, arguing that "this was not a child molesting case" and that the focus in a case like his "must be on the images themselves, but the images themselves in this case are inconclusive."  (Dkt. 17 at 7.)  This is not a correct statement of the law.  In *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011), on which Al-Awadi relies, the Seventh Circuit stated that the "*primary* focus in evaluating the legality of the charged photographs must be on the images themselves," but "the cases reveal that the intent and motive of the photographer can be a relevant consideration in evaluating those images." (Emphasis added.)  Under this standard, the significant evidence showing that Al-Awadi had molested CV1 within seconds of taking the photographs of her is evidence of his sexually motivated intent in taking the photographs.  Indeed,

the Seventh Circuit held as much in Al-Awadi's direct appeal, and this Court is not free to revisit that issue. *See Al-Awadi*, 873 F.3d at 599 ("The molestation made Al-Awadi's criminal intent in taking the photographs more probable than it would have been without the evidence of molestation, so the molestation was relevant."); *see also Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005) ("In the context of § 2255 petitions, the law of the case doctrine dictates that once this court has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it." (internal citations and quotations omitted)).   On this record, Al-Awadi cannot show prejudice from his trial counsel's failure to object to Agent Johnson's testimony.

Al-Awadi also suggests that there is a reasonable probability that the outcome of the trial would have been different but-for his trial counsel's failure to object to Agent Johnson's testimony because, in explaining why there was sufficient evidence to support Al-Awadi's convictions, the Seventh Circuit mentioned that he "had previously shown an interest in CV1—the two called each other 'Little Baby,' for example."  (Dkt. 2 at 8 (citing *Al-Awadi*, 873 F.3d at 601).)  According to Al-Awadi, this "was not a fact but a gloss of [Agent Johnson], whose testimony would have been suppressed had movant's trial counsel objected to it."  *Id.*  It is not at all clear that the Seventh Circuit was relying solely on Agent Johnson's testimony to support its statement that Al-Awadi had "previously shown an interest in CV1."   After all, Al-Awadi himself admitted that he had inside jokes with CV1 and had a pet name for her; in addition, the Government introduced a picture of Al-Awadi with CV1 that was recovered from his cell phone (after being deleted).  Those facts,

standing alone and without Agent Johnson's "grooming" testimony would appear to be sufficient to support an inference that Al-Awadi had "shown an interest in CV1."

Regardless, even if the Seventh Circuit did rely entirely on Agent Johnson's "grooming" testimony for this point, it did not determine that there would have been insufficient evidence to support Al-Awadi's convictions absent that fact. It merely identified that fact as one supporting the inference that he took the photographs for a sexual purpose. *Al-Awadi*, 873 F.3d at 601. As explained, elsewhere in the opinion, the Seventh Circuit held that evidence of the molestation itself was relevant to establishing Al-Awadi's intent. *Id.* at 599. The Court does not understand Al-Awadi to be arguing that the molestation evidence was insufficient—standing alone, and without Agent Johnson's testimony—to support his convictions. And, to the extent he does, that argument fails because the Seventh Circuit clearly held that the molestation evidence was relevant to the issue of intent, and this Court may not revisit that conclusion. *See Fuller*, 398 F.3d at 648.

Because Al-Awadi has not shown prejudice from the failure to object to Agent Johnson's testimony, this ineffective-assistance-of-counsel argument fails.

## 2.   **Al-Awadi's Internet Browsing History**

Al-Awadi also contends that his trial counsel was ineffective in connection with his handling of the evidence of his internet browsing history, specifically, the evidence showing that he visited a Reddit page titled "I'm attracted to my little sis." (Dkt. 1 at 5.)

First, he contends that his trial counsel was ineffective because he failed to file a motion *in limine* to exclude Al-Awadi's internet browsing history, even though he knew before trial that the Government might try to introduce it. *Id.* He argues in conclusory fashion that "[d]oing so would have clarified this issue for the court before trial and resulted in the exclusion of the misleading

35

evidence." (Dkt. 2 at 7.)  This argument ignores the fact that his trial counsel did object, at length and in detail, to the Government's attempted admission of the internet browsing history.  Although his trial counsel did not submit the actual web page, he made all the other arguments Al-Awadi is making now, including that the Reddit page depicted fictional adult incest, not incest involving a child.  He does not identify any other arguments that his trial counsel might have made that would have increased the chances of success.  Al-Awadi fails to cite any authority holding that a failure to file a motion *in limine* amounts to ineffective assistance of counsel when the same arguments are later raised at trial.

Second, Al-Awadi contends that his trial counsel was ineffective because, after the Reddit page title had been "erroneously" admitted at trial, he failed to obtain and introduce into the record the actual web page associated with the address and move for a mistrial or a new trial.  (Dkt. 1 at 5.)  But this argument assumes that the Reddit page title was erroneously admitted.  As explained above, it was not—even if the page itself does not include child pornography.  Thus, a motion for a mistrial or new trial would have been futile, and his counsel was not ineffective for failing to make such a motion.  *See Warren*, 712 F.3d at 1104; *Carter*, 355 F.3d at 924.

## C.   Ineffective Assistance of Appellate Counsel

Finally, Al-Awadi contends that appellate counsel was ineffective for failing "to raise as an issue on direct appeal the district court's improper admission, over the movant's objection, of evidence implying that movant had an interest in child pornography, as described above under Grounds One and Two." (Dkt. 1 at 7.)  "To prevail on a claim that appellate counsel's performance was constitutionally deficient, [a petitioner] must show not only that the claims omitted from his direct appeal would have been meritorious, but that they were 'significant and obvious' and

'clearly stronger' than the issues counsel *did* raise." *Clark v. United States*, 680 F. App'x 470, 473 (7th Cir. 2017) (quoting *Blake v. United States*, 723 F.3d 870, 888 (7th Cir. 2013)). Under this standard, the district court should "examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). "Significant issues which could have been raised should then be compared to those which were raised." *Id.* The presumption of effective assistance of counsel will generally only be overcome "when ignored issues are clearly stronger than those presented." *Id.* To show prejudice in this context, a defendant must show that, absent the inadequate performance, "there is a reasonable probability that his case would have been remanded for a new trial[.]" *Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000).

Al-Awadi's claim of ineffective assistance of appellate counsel fails because he has failed to establish that his argument about the Court's decision to admit the title of the Reddit page is "clearly stronger" than the issues his appellate counsel did raise. His argument on this point is wholly conclusory. (*See* Dkt. 2 at 10.) He fails to even discuss the arguments that his appellate counsel did raise, let alone explain why the omitted issue about the Reddit page title is "clearly stronger" than those presented. Moreover, the issues appellate counsel did raise were strong enough to generate a 15-page published opinion from the Seventh Circuit. On this record—and absent any argument from Al-Awadi—the Court cannot conclude that the issue about the Reddit page title is "clearly stronger" than the issues appellate counsel did raise.

Moreover, Al-Awadi has not shown that this issue would have been meritorious if it had been raised. As explained above, the Reddit title page was admissible. Accordingly, appellate counsel was not ineffective for failing to raise the issue. *See Warren*, 712 F.3d at 1104; *Carter*,

355 F.3d at 924.  Because Al-Awadi has not shown that his counsel's performance was deficient, Al-Awadi's claim of ineffective assistance of appellate counsel fails.

## IV.    CONCLUSION

For the reasons explained in this Entry, Al-Awadi is not entitled to relief on his § 2255 motion. Accordingly, his Motion for relief pursuant to § 2255 is **DENIED** and this action is **dismissed with prejudice**.  Judgment consistent with this Entry shall now issue and the Clerk shall **docket a copy of this Entry in Case No. 1:15-cr-00072-TWP-DML-1.**  The Motion to vacate, Cr. Dkt. [160], shall also be **terminated** in the underlying criminal action.

## V. DENIAL OF CERTIFICATE OF APPEALABILITY

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability.  *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Al-Awadi has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).   The Court therefore **denies** a certificate of appealability.

**SO ORDERED.**

Date:  4/23/2020

_____

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

John Kindley
john@kindleylaw.com

Bradley Paul Shepard
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brad.shepard@usdoj.gov